UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MAINE DEPARTMENT OF           )
HEALTH AND HUMAN              )
SERVICES,                     )
                              )
         Plaintiff,           )
                              )   Civil No. 1:17-cv-00252-JAW
    v.                        )   Bankruptcy No. 16-10172
                              )
THE GETCHELL AGENCY, et al.,  )
                              )
         Defendant.           )

**ORDER DENYING LEAVE TO APPEAL**

A creditor state governmental agency seeks leave to appeal the Bankruptcy Judge's interlocutory order confirming that the automatic stay applies to the agency's effort to terminate the debtor's Medicaid provider agreement. The Bankruptcy Judge addressed two issues: (1) whether the Bankruptcy Court has jurisdiction over any challenge to the termination of the provider agreements, and (2) whether the automatic stay applies because the provider agreements are not "property of the estate" under 11 U.S.C. § 362(a)(3). The Court concludes that these issues do not warrant interlocutory appeal.

I.  **FACTUAL AND LEGAL BACKGROUND**

The Getchell Agency (Getchell) is a small healthcare business located in Bangor, Maine. The Maine Department of Health and Human Services (MDHHS) is the state agency that administers the state's Medicaid program, also called MaineCare. Getchell operates under two executed MaineCare provider agreements,

dated March 5, 2010 and March 9, 2010. *Stipulations* ¶ 4 (Bankr. ECF No. 609). Through the provider agreements, Getchell provides residential and support services to individuals with physical, emotional, and intellectual disabilities. *Id.* ¶ 6. The number of Getchell's clients typically fluctuates between sixty-five and seventy. *Id.* ¶ 7.

Around August 19, 2013, MDHHS conducted an audit on Getchell's premises, after which MDHHS's Program Integrity Unit determined that Getchell violated MaineCare rules in its provision and documentation of services. *Id.* ¶ 8. On September 11, 2015, MDHHS issued a Notice of Violation seeking to recoup MaineCare overpayments totaling roughly $1.04 million, and issued a Final Informal Review Decision affirming the conclusion on January 11, 2016. *Id.* ¶¶ 11-12. Getchell timely appealed that decision. *Id.* ¶ 13.

On March 25, 2016, Getchell filed a voluntary Chapter 11 bankruptcy petition. *Voluntary Petition for Non-Individuals Filing for Bankruptcy* (Bankr. ECF No. 1). As a result, the administrative process was automatically stayed. *Stipulations* ¶ 13. On July 12, 2016, MDHHS filed a claim for the roughly $1.04 million it had determined it overpaid Getchell for MaineCare services. *Id.* ¶ 14; *Proof of Claim* (Bankr. Claim No. 28-1).

The relevant automatic stay provisions of the bankruptcy code block (1) "the commencement or continuation, including . . . administrative . . . proceeding[s] against the debtor that was or could have been commenced before the commencement of the case . . . ," 11 U.S.C. § 362(a)(1), and (2) "any act to obtain possession of property

2

of the estate . . . or to exercise control over property of the estate." *Id.* § 362(a)(3). There is an exception, however, for "an action or proceeding by a government unit . . . to enforce such governmental unit's . . . police and regulatory power . . . ." *Id.* § 362(b)(4).

On April 21, 2017, MDHHS asked the Bankruptcy Court to declare that "the automatic stay would not apply to its efforts to terminate Debtor [Getchell] from participation in [MaineCare]." *MDHHS' Mot. for an Order Confirming that the Automatic Stay does not Apply* (Bankr. ECF No. 565) (*Pl.'s Stay Mot.*). On May 30, 2017, Getchell filed a response. *The Getchell Agency's Objection to Mot. for for [sic] an Order Confirming that the Automatic Stay does not Apply* (Bankr. ECF No. 599) (*Def.'s Stay Opp'n*). The parties addressed three issues: (1) whether the Bankruptcy Court has jurisdiction over any challenge to MDHHS's termination of the provider agreements; (2) whether the automatic stay applies because the provider agreements are not "property of the estate" under 11 U.S.C. § 362(a)(3); and (3) whether MDHHS' decision to terminate the provider agreements satisfies the automatic stay exception for police and regulatory powers under § 362(b)(4). *Pl.'s Stay Mot.* at 2; *Def.'s Stay Opp'n* at 1-2.

On May 30, 2017, the Bankruptcy Judge scheduled a hearing and the parties agreed to bifurcate the proceeding to consider only the first two questions, preserving the third issue. *Scheduling Order Relating to: Plan Confirmation and Mot. of State of Maine Department of Health and Human Services for Order Determining that the Automatic Stay is not Applicable* (Bankr. ECF No. 601). On June 22, 2017, the

3

Bankruptcy Judge held the hearing and ruled against MDHHS on the first two questions. *Min. Entry* (Bankr. ECF No. 625).

This appeal followed with MDHHS' notice of appeal and motion for leave to appeal on June 30, 2017. *Maine Department of Health and Human Services' Notice of Appeal and Statement of Election* (ECF No. 1) (Bankr. ECF No. 638); *Maine Department of Health and Human Services' Mot. for Leave to Appeal* (ECF No. 4) (Bank. ECF No. 639) (*Pl.'s Appeal Mot.*). On August 14, 2017, Getchell filed a response. *The Getchell Agency's Obj. to Maine Department of Health and Human Services' Mot. for Leave to Appeal* (ECF No. 5) (Bankr. ECF No. 664) (*Def.'s Appeal Opp'n*).

## II. THE PARTIES' POSITIONS

### A. MDHHS' Motion for Leave to Appeal

MDHHS asserts that the Bankruptcy Judge erred regarding the jurisdictional question because it believes it has the discretion to terminate Medicaid provider agreements and such a decision constitutes non-final agency action beyond the reach of the Bankruptcy Court. *Pl.'s Appeal Mot.* at 3-4 (citing *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32, 41 (1991)). MDHHS contends that termination actions are non-final because providers may appeal that decision through its administrative process. *Id.*

MDHHS claims the Bankruptcy Judge erred regarding the second question about "property of the estate" because it believes, "Getchell has no protectable property interest in the MaineCare Provider Agreements." *Id.* at 4. MDHHS maintains that there is no property interest because "[a] state may discontinue its

4

participation in Medicaid – or any of the particular Medicaid services provided . . . ." *Id.* MDHHS also argues that it has the discretion to terminate providers "at any time, with or without cause." *Id.* at 3.

MDHHS also argues the Court should grant immediate leave to appeal "given how integral those issues are to the Department's ongoing and future authority to administer Maine's Medicaid program." *Id.* MDHHS points out that, if the stay does not apply and it can terminate the provider agreements, the future course of the bankruptcy case will be materially different than the current reorganization plan, which contemplates Getchell continuing to operate as a MaineCare provider. *Id.*[1]

**B. Getchell's Opposition**

Getchell emphasizes that MDHHS is "not satisfied to simply proceed as it previously agreed and now it wants to simultaneously and inexplicably pursue an interlocutory appeal thus driving up the litigation burden on all parties." *Def.'s Appeal Opp'n* at 2.

Getchell denies that MDHHS has a unilateral right to terminate provider agreements at any time. *Id.* at 8-10. Getchell insists that *In re Corporacion de Servicios Medicos Hospitalarios de Fajardo*, 805 F.2d 440 (1st Cir. 1986), controls the

---

[1] MDHHS also alleges new ongoing violations of MaineCare rules, including allegations about Getchell's treatment of a patient after the Bankruptcy Judge's June 22, 2017 ruling. *Id.* at 5. Getchell points out that the patient has been a resident for over seventeen years without issue until this financial dispute, and it argues these events are irrelevant and should be stricken because they occurred after the decision under appellate consideration. *Def.'s Appeal Opp'n* at 17-18. The Court does not consider MDHHS's allegations and need not address these concerns because they speak to the third issue, which MDHHS chose to reserve for later consideration: the police and regulatory powers exception to the automatic stay. On that question, MDHHS' decision to seek interlocutory appeal, with the attendant delay, undermines MDHHS' argument that its termination efforts are an urgent and legitimate exercise of police or regulatory power, not an effort to protect its pecuniary interest.

5

the "property of the estate" question. *Id.* 11-13, 15. Getchell also points out that other courts have held that healthcare contracts, including Medicaid participation contracts, do create property rights for bankruptcy purposes. *Id.* at 16 (citing, among others, *Patchogue Nursing Center v. Bowen*, 797 F.2d 1137, 1144-45 (2d Cir. 1986)).

### III. LEGAL STANDARD

For interlocutory bankruptcy appeals under 28 U.S.C. § 158(a), courts look to the general rules governing appeals to the circuit courts from non-final district court orders. *See e.g.*, *In re Watson*, 309 B.R. 652, 659 (B.A.P. 1st Cir. 2004); *Canadian Pac. Ry. Co. v. Keach*, No. 1:17-CV-00278-JDL, 2017 WL 4845733, at *3 (D. Me. Oct. 26, 2017); *In re Jackson Brook Inst., Inc.*, 280 B.R. 1, 4 (D. Me. 2002) ("In deciding whether to exercise discretion to hear an appeal, 'most courts utilize the same standards as govern the propriety of district courts' certification of interlocutory appeals to the circuit courts under [28 U.S.C.] § 1292(b).'") (quoting *In re Bank of New England Corp.*, 218 B.R. 643, 652 (B.A.P. 1st Cir. 1998)).

"The general rule is that interlocutory orders are not immediately reviewable but must await a final judgment . . . ." *Awuah v. Coverall N. Am., Inc.*, 585 F.3d 479, 480 (1st Cir. 2009). The district court must determine whether the order (1) "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) for which "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). There is a preference against piecemeal litigation, and the procedures available under section 1292(b) should be granted sparingly. *Caraballo-Seda v. Municipality of Hormigueros,* 395 F.3d 7, 9 (1st Cir. 2005). In the First Circuit, interlocutory

6

certification is allowed only "where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority." *McGillicuddy v. Clements*, 746 F.2d 76, 77 n.1 (1st Cir. 1984) (citing *In re Heddendorf*, 263 F.2d 887, 888-89 (1st Cir.1959)); *Caraballo-Seda*, 395 F.3d at 9. Further, a finding that there is "substantial ground for difference of opinion" requires more than "garden variety legal argument." *Bank of New England*, 218 B.R. at 653.

## IV. DISCUSSION

### A. There is not substantial ground for difference of opinion.

#### 1. There is no ground for difference of opinion regarding the jurisdiction of the Bankruptcy Court.

Regarding the jurisdictional question before the Bankruptcy Judge, the parties focused their attention on cases interpreting a Medicare jurisdiction-stripping provision, 41 U.S.C. § 405(h). *Pl.'s Stay Mot* at 8-11; *Def.'s Stay Opp'n* at 12-20. The Bankruptcy Judge, however, was likely correct when he determined that there was jurisdiction for the automatic stay because that Medicare limitation is inapplicable to the Medicaid statute, which does not contain such a provision. It is true that some courts have interpreted the Medicare jurisdiction-stripping provision to cover decisions revoking a provider's approval under Medicaid in some situations, such as when the provider operates under both Medicare and Medicaid, and the decision to revoke Medicaid approval automatically revokes Medicare approval. *See Cathedral Rock of North Coll. Hill v. Shalala*, 223 F.3d 354, 357 (6th Cir. 2000); *see also In re Bayou Shores SNF, LLC*, 828 F.3d 1297 (11th Cir. 2016) (summarizing cases and history of the provision). The Bankruptcy Court was likely correct not to extend that

7

logic to cover the situation here, where the provider operates only under Medicaid, because no courts have extended this reasoning as far as MDHHS asks. There have been legislative attempts to add a similar provision to the Medicaid statute, but those attempts have been unsuccessful. *See e.g.*, Medicare Waste Tax Reduction Act of 1999, S. 1451, 105th Cong §§ 9-10 (1999).

MDHHS also points to a quote from *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. at 41, where the Supreme Court said, "We are not persuaded . . . that the automatic stay provisions of the Bankruptcy Code have any application to ongoing, nonfinal administrative proceedings." Earlier in the opinion, however, the *MCorp* Court noted that the agency enforcement proceeding "would appear to be stayed by 11 U.S.C. § 362(a)(1)" except it "f[e]ll squarely within" the (b)(4) exception for police and regulatory powers. *Id.* at 40-41. The Supreme Court moved on to address arguments that the (a)(3) and (a)(6) stay provisions protecting efforts to collect property of the estate blocked the enforcement proceedings. *Id.* at 41. The *MCorp* Court rejected that argument with the words MDHHS now quotes, but the Supreme Court reasoned that the mere possibility that enforcement actions may eventually result in an order against property of the estate was not sufficient to block the enforcement action in the first place. *Id.*

In context, the "nonfinal administrative proceedings" language in *MCorp* referred only to the counterarguments about (a)(3) and (a)(6). This Court does not read the quote as undermining the *MCorp* Court's own premise, just a few paragraphs earlier, that (a)(1) would operate to stay the administrative enforcement proceeding

8

if not for the (b)(4) exception. As the Sixth Circuit later said, "In the context of a discussion of § 362(a)(3), this sentence is merely a recognition that nonfinal proceedings are not 'exercise[s] of control over [ ] property of the estate' that are stayed under that subsection." *In re Javens*, 107 F.3d 359, 366 (6th Cir. 1997) (modifications in original). The Court found no cases reading the quote as MDHHS suggests. Such an interpretation would excise the (a)(1) stay of administrative proceedings out of the statute altogether.

> **2. There is little ground for difference of opinion regarding the issue of whether the provider agreements are executory contracts which constitute "property of the estate" for purposes of the automatic stay.**

There is slightly more ground for difference of opinion regarding the issue of whether the provider agreements are executory contracts constituting "property of the estate." This is because the inquiry around government executory contracts is fact-intensive, depending on the details of the relationship between the government and the debtor, such as the transferability of the debtor's interest, whether there is extensive governmental regulation of the debtor, and whether termination requires an affirmative act or occurs automatically. *See In re Gull Air, Inc.*, 890 F.2d 1255, 1259-64 (1st Cir. 1989) (FAA allocation of landing slots was not property of the estate of the debtor airline); *Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233, 256 (3d Cir. 2001) (HUD grant relationship was not property of the estate of the debtor non-profit community service organization). One district court helpfully summarized:

> What is considered property of the estate is determined by 11 U.S.C. § 541, which provides under subsection (a)(1) that, with certain

9

> exceptions, the estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." Courts have overwhelmingly held that property of the estate should be defined "broadly to include all of the debtor's interests, legal and equitable . . . . In fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) (citations omitted). However, it is also commonly accepted that the estate's rights should not be enhanced by the bankruptcy; in other words the bankruptcy estate's rights are limited to those had by the debtor at petition, which are determined by reference to state and federal law.
>
> Governmental entities have made much of this distinction in cases determining whether licenses and permits, which are analogous to the provider agreements in this case, are property of the estate. Government entities argue, as HHS has in this case, that government issued licenses and permits are not property of the estate because the debtor has no property rights in the licenses and permits because they are held only at the discretion of the monitoring agency. The right to hold the permit or license or to participate in the program is a privilege subject to regulation by the regulating entity and thus is not part of the estate, goes the argument. The courts have universally rejected the government's argument, however.
>
> . . . Accordingly, in this case the debtor's rights under the provider agreements to participate in the Medicaid and Medicare provider reimbursement program are properly considered property of the estate. The debtor's rights under the agreement to receive reimbursement payments from government in this program clearly have value to the debtor, as indicated by the debtor's intention to assume the agreements to fund its plan of reorganization. Therefore, HHS's attempt to dishonor these agreements by excluding the debtor from the program is obviously an exercise of control over property of the estate.

*In re Psychotherapy & Counseling Ctr., Inc.*, 195 B.R. 522, 531–32 (Bankr. D.D.C. 1996) (some internal citations omitted).

The other closest cases the Court located concluded that medical provider agreements are executory contracts which the trustee can choose to assume or reject and which, if accepted, become property of the estate. *See In re Univ. Med. Ctr.*, 973 F.2d 1065, 1078 (3d Cir. 1992) (reasoning that the trustee has the power to assume

10

or reject Medicare provider agreements); *In re Santiago*, 563 B.R. 457, 474 (Bankr. D.P.R. 2017) ("Other courts are also in agreement that provider agreements such as the one in question in this case are executory contracts" considered property of the estate); *In re Corporacion*, 805 F.2d at 442.

The Court need not discuss the question any further, however, because any ground for disagreement is not substantial, especially in light of the risk of piecemeal litigation and the likelihood that this question is academic. *See infra.* Accordingly, interlocutory appeal on this issue is not warranted.

**B. Leave to appeal would not materially advance the ultimate termination of the litigation.**

The major obstacle for this interlocutory appeal is the effect on the ultimate termination of the litigation, often referred to as "considerations of judicial economy." *See In re Am. Colonial Broad. Corp.*, 758 F.2d 794, 800 n.6 (1st Cir. 1985). There are several burdensome inefficiencies in Getchell and MDHHS's litigation approach.

First, the decision to bifurcate the issues before the Bankruptcy Judge and take an interlocutory appeal leaves a key issue undecided: whether MDHHS' efforts to terminate Getchell's further participation in MaineCare are exempt from the automatic stay under the regulatory and police powers exception of 11 U.S.C. § 362(b)(4). In a very similar case, *Parkview Adventist Medical Center v. United States on behalf of Department of Health & Human Services*, 842 F.3d 757 (1st Cir. 2016), the First Circuit first addressed the (b)(4) exception, finding it unnecessary to address other questions, such as the scope of the automatic stay barring efforts to exert control over property of the estate under § 362(a)(3). *Id.* at 765. Interlocutory appeal

will entail further delay and require expending considerable judicial resources, all of which would be entirely unnecessary if MDHHS succeeds on the (b)(4) issue before the Bankruptcy Court.

Second, even if the Court were to grant the motion for leave to appeal and even if it eventually agreed with MDHHS that the provider agreements are not "property of the estate" and § 362(a)(3) does not bar MDHHS' termination action, it does not appear that the decision would impact the ultimate termination of the litigation. MDHHS has not presented any reason or argument explaining why the agencies' termination action is not an "administrative . . . proceeding against the debtor" that § 362(a)(1) automatically stays. Accordingly, the Court wonders whether there is any practical significance to the (a)(3) "property of the estate" issue.

Third, the questions presented to the Bankruptcy Judge only involved the applicability of the automatic stay because MDHHS did not seek relief from the automatic stay. MDHHS could obtain the ultimate relief it seeks from the Bankruptcy Judge even though it lost on these issues and even if it lost again on the (b)(4) issue. By presenting only the question of applicability, then bifurcating the issues before the bankruptcy judge, and pursuing interlocutory appeal, MDHHS multiplies litigation over a prolonged period, rather than presenting all arguments at once.

The efficient termination of the litigation is not served by separating out questions on the many facets of each of the various aspects of the automatic stay provisions. The heightened bar for interlocutory appeals addresses the concerns

raised by precisely this sort of piecemeal litigation, namely "the elimination of delays" and avoiding the 'harassment and cost of a succession of separate appeals. . . .'" *In re Am. Colonial Broadcasting*, 758 F.2d at 800 n.6 (quoting *Cobbledick v. United States*, 309 U.S. 323, 325 (1940)); *Catlin v. United States*, 324 U.S. 229, 234 (1945).

## V. CONCLUSION

The Court DENIES MDHHS' Motion for Leave to Appeal (ECF No. 4).

SO ORDERED.

      /s/ John A. Woodcock, Jr.
      JOHN A. WOODCOCK, JR.
      UNITED STATES DISTRICT JUDGE

Dated this 17th day of April, 2018